NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-3764

_____

DR. WILLIAM CARR,
                                    Appellant

v.

STATE OF NEW JERSEY; SUPERIOR COURT NEW JERSEY;
NEW JERSEY JUDICIARY; PETER CONERLY; and COLLINS E. IJOMA

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-09-cv-00913)
District Judge:  Honorable William J. Martini

_____

Submitted under Third Circuit LAR 34.1(a)
on July 15, 2013

(Filed: August 7, 2013)

Before:  RENDELL, SMITH and ROTH, Circuit Judges.

_____

O P I N I O N

_____

**RENDELL**, <u>Circuit Judge</u>:

Dr. William Carr brought this failure-to-promote employment suit against his employers because he did not receive a second-round interview for the Essex Vicinage Chief Probation Officer ("CPO") position in 2007. Carr claims racial discrimination under Title VII of the Civil Rights Act, the New Jersey Law Against Discrimination (NJLAD), and 42 U.S.C. § 1983, and retaliation under Title VII and the NJLAD. He appeals the District Court's grant of the Defendants' motion for summary judgment on all counts. We will affirm.[1]

Carr, an African American male who holds several professional licensures and advanced degrees in counseling and public administration, worked in probation for the New Jersey Judiciary for approximately thirty-five years. He became the Assistant Chief Probation Officer ("ACPO") of Essex Vicinage in 2002, and held that position until his retirement. Defendant Peter Conerly became CPO of Essex Vicinage in 1999 and held that position until his retirement in 2007. He was Carr's direct supervisor. Defendant Collins Ijoma, the Essex Vicinage Trial Court Administrator, provided administrative support and ensured compliance with the New Jersey Judiciary's Equal Employment Opportunity/Affirmative Action ("EEO/AA") Master Plan.

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We apply de novo review for a summary judgment ruling. *Azur v. Chase Bank*, 601 F.3d 212, 216 (3d Cir. 2010). We determine whether any genuine issues of material fact exist, and whether, viewing the facts in the light most favorable to Carr, the Defendants were entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).

Carr first applied for an ACPO position in 2000. He was not selected to interview and was told that he was not qualified for the position. Carr then instituted a failure-to-promote employment discrimination suit against the New Jersey Judiciary and Conerly in federal court ("2000 lawsuit"). In 2002, with the 2000 lawsuit pending, he again applied for the ACPO position in Essex County and was promoted to the position. He voluntarily dismissed his suit,[2] and later testified that he had "more experience" when he applied in 2002. In 2005, Carr applied for two other positions—Family Division Manager and Assistant Trial Court Administrator/General Operations Division Manager—and received first-round, but not second-round, interviews for both. Conerly was on the Family Division interview panel and was the only panelist to recommend advancing Carr. The other panelists' notes and score sheets indicate that Carr interviewed poorly and did not fully address the questions posed. For both positions, the panelists recommended only minority candidates to advance to the next rounds of the selection process.

When Conerly intended to retire in 2007, Carr applied for Conerly's CPO position after it was posted in December 2006. Carr and seven others were selected for interviews based on their experience and credentials in February 2007. Ijoma appointed the interview panel, which consisted of Conerly, James Agro, and Bob Sebastian. Having a minority on the panel is a "best practice" for the New Jersey Judiciary, but is not required under the EEO/AA Master Plan.

---

[2] Carr claims that Defendant Ijoma approached him in 2002 and intimated that, if Carr dropped the 2000 suit, he would be promoted to the ACPO position in Essex. Even if these facts were undisputed, they are not material to the issues in this case.

Interview performance provided the only basis for panelists to evaluate and score candidates. In their notes of Carr's interview, the panelists uniformly expressed disappointment with his interviewing skills and his ability to apply his experience in answering the questions posed. The panelists similarly testified in depositions that they did not consider his background knowledge or experience in making second-round determinations, because he failed to incorporate this information in responding to interview questions. No evidence in the record suggests that Conerly informed the other panelists of Carr's 2000 lawsuit during that process.

Upon learning that he was not selected for a second-round interview and that a white male was selected for the position, Carr completed administrative complaint procedures with the New Jersey Judiciary and the EEOC. He then filed the present suit in the United States District Court for the District of New Jersey.

Following the Defendants' summary judgment motion, the District Court granted judgment for the Defendants on all counts. With respect to Carr's discrimination claims, the District Court determined that Carr established his prima facie case, and that the Defendants met their burden of establishing a legitimate, nondiscriminatory reason for not selecting Carr for a second-round interview: specifically, Carr's poor interview performance. The District Court then concluded that, based on the record presented, Carr failed to meet his burden of demonstrating pretext. With respect to Carr's retaliation claims, the District Court concluded that, although Carr provided evidence showing that he engaged in a protected activity and then suffered an adverse employment action, he

failed to establish his prima facie case because he failed to show a causal link between the 2000 lawsuit and his lack of success in the 2007 interview process.

Carr timely appealed. He raises before us the same arguments against summary judgment that he argued to the District Court. We conclude that these arguments fail to provide grounds for reversal.

With respect to his discrimination claims, Carr challenges the District Court's conclusion that he failed to adduce evidence sufficient to allow a reasonable fact finder to find pretext. Carr argues that the District Court failed to accord adequate weight to three facts which he raised in his effort to establish pretext, namely: 1) the notes of the interview panelists, including Conerly, did not consider Carr's credentials or experience when making second-round interview determinations; 2) the Defendants' failure to follow their "best practices" by not having a minority on the interview panel; and 3) the Defendants' failure to follow the EEO/AA Master Plan by not adequately maintaining administrative records fully documenting the hiring processes for the positions to which he applied. These three facts, he claims, demonstrate pretext because they allow a fact finder to reasonably "either (1) disbelieve the [Defendants'] articulated legitimate reason[]; or (2) believe that an invidious . . . reason was more likely than not a . . . determinative cause of the [Defendants'] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

We agree with the District Court's conclusion that Carr's evidence presented no weaknesses, contradictions, or inconsistencies that would permit a reasonable jury to infer that the Defendants' nondiscriminatory reason was pretextual. It is undisputed that

5

the panelists' scoring of candidates was based entirely upon candidates' responses to interview questions; given Carr's weak performance at this stage of the selection process, the panelists had no basis for considering the applicability or relevance of his experience or knowledge for the position. The panelists' notes show that Carr's first-round interview answers—responding to the same questions that were posed to all candidates—were off-point, disjointed, rambling, and failed to draw upon and convey his relevant probation experience to the panelists. These notes, as well as the panelists' deposition testimony confirming the same, are consistent with the Defendants' nondiscriminatory explanation that Carr did not receive a second-round interview because he interviewed poorly and failed to apply his experience to the questions asked. Moreover, Carr does not proffer any evidence that contradicts the panelists' accounts of his interview performance or the methodology for assessing interviewees for second-round interviews. That there is evidence that Carr interviewed similarly in at least one of his 2005 interviews further supports the Defendants' proffered nondiscriminatory reasons.

Additionally, contrary to Carr's assertion that the Defendants did not follow "best practices" by having a minority as a panel member, Bob Sebastian testified at his deposition that he is Hispanic. Although his deposition testimony also reflects that Sebastian personally "did not consider himself to be on the panel as a minority," Appellant Br. at 21, but rather because of his position as director of probation services, this does not negate the fact that Defendants complied with their "best practices."

Finally, as the District Court properly concluded, the recordkeeping failures in Essex Vicinage relating to the 2007 hiring process—specifically, that the Defendants

failed to keep, for the requisite three-year period, a file containing a list of candidates selected for interview, failed to retain information on the dates of first- and second-round interviews, and failed to have selection forms, interview questions, and selection criteria reviewed by all appropriate EEO/AA personnel—were not indicia of pretext since they had no bearing on the interview selection scoring procedures employed for selecting candidates for second-round interviews. Furthermore, Carr has adduced no evidence suggesting that the selection criteria and interview questions (which were the same for all candidates) were inherently unfair or discriminatory.

Accordingly, the facts that Carr claims demonstrate pretext, when viewed in light of the entirety of the record, are insufficient to support such a conclusion. Because Carr failed to meet his burden of demonstrating pretext, summary judgment in favor of the Defendants on Carr's discrimination claims was proper.

With respect to his retaliation claims, Carr urges that the District Court erroneously determined that he failed to adduce evidence establishing a causal link between the 2000 lawsuit and the 2007 interview. In light of the record, we agree with the District Court's reasoning.

The District Court correctly determined that seven years between the lawsuit and interview was inadequate temporal proximity to independently support a causal connection. While Carr points to Conerly's knowledge of the 2000 lawsuit, his presence on two interview panels that declined to recommend Carr, and Carr's history of not advancing to second-round interviews as evidence of retaliatory animus, these facts are insufficient to establish a causal link. There is no evidence that suggests the other

7

panelists knew of the 2000 lawsuit at the time of the first-round interview, or that Conerly informed the other panelists about the 2000 lawsuit before or during the interview process, or that he somehow controlled or influenced the other panelists' decisions. Indeed, the record shows that interview panelists completed evaluation forms and scoring independently prior to any discussion. As to Carr's prior history as an interview candidate, Conerly was the only panelist in 2005 to recommend Carr for advancement in the Family Division Manager interview process.

Carr also urges with respect to his retaliation claims that the District Court failed to accord adequate weight to the same three facts that he raised in support of his discrimination claims. However, he does not explain, nor is it clear to us based on the entirety of the record, how those facts establish the requisite causal link between his 2000 lawsuit and his lack of invitation for a second-round interview in 2007. Carr fails to adduce any additional evidence suggesting a causal connection. Because Carr failed to establish a prima facie case for retaliation, the District Court properly granted summary judgment for the Defendants on Carr's retaliation claims.[3]

For the foregoing reasons, we will affirm the District Court's grant of summary judgment for the Defendants on all counts.[4]

---

[3] We also agree with the District Court's determination that even if Carr made out his prima facie case for retaliation, he has failed to proffer evidence sufficient to rebut the Defendants' non-retaliatory reason for not hiring Carr for the CPO position.

[4] Because Carr's NJLAD claims fail on the merits, we need not consider his additional argument that he is entitled to punitive damages under the NJLAD.